PER CURIAM.
In this juvenile dependency case, the State appeals from a disposition order committing A.C. to a Level 4, low-risk residential program, and an immediately following order modifying A.C.’s commitment to probation. The State correctly argues that the trial court made a procedural “end run” around the requirement that it not depart from Department of Juvenile Justice’s (“DJJ”) recommendations without stated reasons supported by a preponderance of evidence. We reverse for a new disposition.

Facts

The State charged fifteen-year-old A.C. with burglary of a dwelling and grand theft after he and another juvenile entered the victim’s garage and stole two bicycles. A.C. pled no contest to the burglary charge in exchange for the State dropping the grand theft charge. In its pre-disposition report, the DJJ recommended that A.C. be committed to a Level 4, low-risk residential program. The recommendation was based on the following comments:
The youth became involved in delinquency at the age of fourteen. He has a history of truancy and his school records displayed 5 or 6 separate school suspensions. He is currently behind in his academic requirements due to the *1242 amount of absences and retention in Kindergarten, 2nd grade, and 6th grade twice. [He] appears to emulate or admire negative or anti-social peers. The youth admitted to using THC and experimenting with alcohol and other drugs. The youth incurred the current offense of Petit Theft [sic], a day after having been placed on supervised probation for the second time. The youth violated the conditions of probation on July 6th and 10th of 2009. The youth was given the opportunity to be supervised by the Department twice and was also provided the opportunity to a Diversion Program, all three of which he failed to complete.
Even though the Department has not had much time to work with the youth in the community, the youth appears to be escalating into more serious criminal activity and appears to be in eminent need of a more structured environment where he is able to address the issues affecting his unruly behavior.
[[Image here]]
... Based on the youth’s failure to comply with the Court Order dated July 9, 2009, by committing more serious offenses only one day after being placed on supervised probation by the Court for a second time. The youth is in need of a more structured environment, appropriate for his age that will address substance abuse and academics.
After reviewing the pre-disposition report, the judge announced he had a problem with the DJJ’s recommendation because another child on probation for robbery, who was appearing for disposition on new law offenses committed under a similar time frame as those committed by A.C., was recommended to be placed back on probation. Frustrated by the disparities in the two recommendations, the judge stated, “I can’t do this; I honestly can’t do this.... This is why the system is completely broken.”[1] The judge announced that he would impose disposition and then “accept any motion 30 seconds after sentencing” that A.C.’s attorney wanted to make.
The judge then stated, “The court, pursuant to E.A.R. versus State,[2] is required to follow the recommendations of DJJ. However, the court does have its own authority after I comply with the Supreme Court in sentencing the child.” The judge committed A.C. to the Level 4 program and other sanctions. A few minutes later, the judge called A.C. back to the podium and the following exchange occurred:
THE COURT: [A.C.], come up to the podium. Mom, come on up. [A.C.], the court believes that you have sufficiently — do not need to go into a commitment program. On my own motion, I am — I am converting the post — the commitment order to probation.
So you need to do all the paperwork as he’s being committed, and do a subsequent order modifying it to probation. ...
[PROSECUTOR]: And just for the record, Your Honor, the State will be objecting.
THE COURT: You can object all you want, it’s totally within my discretion.
[[Image here]]
I have the right, within 60 days of any commitment, to do that on my own.
*1243 Following these oral pronouncements, the judge entered written commitment and modification orders. The modification order did not contain reasons for modification. The State timely appealed.

Jurisdiction

A.C. first argues that orders modifying juvenile dispositions are not appeal-able. We agree that the State’s right to appeal in juvenile delinquency cases is “conferred and strictly governed by statute,” E.N. v. State, 484 So.2d 1210, 1211 (Fla.1986); State v. S.S., 40 So.3d 6 (Fla. 4th DCA 2010), and find that we have jurisdiction under two separate statutes: section 985.433(7)(b) and section 985.534(b)5., Florida Statutes (2009).
Section 985.433(7)(b) states:
The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department. Any party may appeal the court’s findings resulting in a modified level of restrictiveness under this paragraph.
(Emphasis added). A.C. argues that the State lacks authority to appeal under this section because a “modified level of restrictiveness” applies only to children committed to one of five levels of residential and non-residential programs, as defined in section 985.03(44)(a)-(e). Thus, A.C. claims that the State cannot appeal an order modifying a child’s disposition to probation, as defined in section 985.03(42), because probation is not one of the five restrictiveness levels. We reject this narrow, strained reading of the statute as unreasonable. First, A.C.’s argument ignores the fact that A.C.’s disposition was modified from a restrictiveness level, specifically a Level 4 low-risk residential program. Second, A.C.’s narrow construction of the statute would lead to the absurd result of the State being able to appeal modifications from one restrictiveness level to another, but not from one restrictiveness level to probation.
In addition, jurisdiction is established under section 985.534(l)(b)5., which gives the State authority to appeal “[t]he disposition, on the ground that it is illegal.” A.C. argues that the State lacks authority to appeal under this section for two reasons: (1) the order under review is not a disposition order, but a post-disposition order suspending or mitigating the disposition; and (2) the order is not an illegal disposition without stated reasons for departure, but a legal order suspending or mitigating disposition, for which no reasons are necessary.
Admittedly, section 985.534(l)(b)5. appears to authorize state appeals from disposition orders, not from orders modifying a disposition. However, in State v. Allen, 553 So.2d 176 (Fla. 4th DCA 1989), the Fourth District treated an immediate modification of an adult criminal sentence as an appealable order under the analogous criminal statute. There, the trial court imposed a guideline sentence but immediately mitigated it below the guidelines without stating reasons for departure. Responding to the state’s objection to such a tactic, the trial court stated, “I didn’t go under, I sentenced him on the guidelines. I mitigated it.” Id. The defendant moved to dismiss the state’s appeal arguing that the mitigation order was not appealable. The appellate court disagreed, finding that the order under review was appealable under section 924.07(l)(e), Florida Statutes (1987), which authorizes the state to appeal “[t]he sentence, on the ground that it is *1244 illegal”. That section is analogous to section 985.534(l)(b)5.
In effect, the Allen court placed substance over form and treated the simultaneous orders as a single, appealable sentencing order. Its subsequent ruling on the merits explains why it did so. The appellate court characterized the trial court’s actions as a “procedural device” used to make an “end run” around the requirement that downward departure sentences be accompanied by written reasons for departing from the sentencing guidelines. The court concluded that allowing such a use of procedure would undermine the sentencing guidelines.
In State v. Buchanan, 580 So.2d 201 (Fla. 5th DCA 1991), this court agreed with Allen’s holding that trial courts should not be permitted to hide behind a procedural rule permitting modification of a sentence as an “end run” around the requirement that they give written reasons for departing from the sentencing guidelines. Id. at 202-03. The Florida Supreme Court adopted this court’s opinion in Buchanan as its own. Buchanan v. State, 592 So.2d 676 (Fla.1992). We agree with the reasoning in Allen, which this court previously adopted in Buchanan, and conclude that the simultaneous disposition and modification orders are in effect a single disposition order. As such, they are appealable under section 985.534(1)(b)5.

Merits

In 2009, the Florida Supreme Court elaborated on the statutory requirement that a trial court may depart from the DJJ’s recommended disposition only if it gives reasons for disregarding the DJJ’s assessment and recommended commitment. E.A.R. v. State, 4 So.3d 614, 638 (Fla.2009). The Supreme Court held that for such reasons to be meaningful, they must:
(1) Articulate an understanding of the respective characteristics of the opposing restrictiveness levels including (but not limited to) the type of child that each restrictiveness level is designed to serve, the potential “lengths of stay” associated with each level, and the divergent treatment programs and services available to the juvenile at these levels; and
(2) Then logically and persuasively explain why, in light of these differing characteristics, one level is better suited to serving both the rehabilitative needs of the juvenile — in the least restrictive setting — and maintaining the ability of the State to protect the public from further acts of delinquency.
Id. Furthermore, a trial court’s reasons for departure must be established by a preponderance of evidence. Id.; see also N.R. v. State, 22 So.3d 859 (Fla. 5th DCA 2009) (reversing upward departure for noncompliance with E.A.R.).
The State argues that the trial court failed to comply with E.A.R. because it did not give any reasons for departing from the DJJ’s recommendation. It further argues, like the conclusion reached in Allen, that the trial court’s immediate modification of the disposition was an improper procedural “end run” around the requirements of E.A.R. The court in Allen reasoned as follows:
Adverting to the merits of the order being reviewed, we believe it would constitute a bad precedent to approve the procedural device used to reach what the trial judge no doubt considered to be the appropriate sentence in this case. To place the imprimatur of this court on the use of Rule of Criminal Procedure 3.800(b) to effect a lesser sentence than that authorized by the sentencing guidelines promulgated pursuant to Florida Rule of Criminal Procedure 3.701 would *1245 have a deleterious effect upon the present strictures inherent in the guidelines by allowing an “end run” around the recommended sentence through the exercise of the discretion allowed in 3.800(b). Aside from policy reasons, we acknowledge the committee note under Rule 3.800, which provides that the authorization in 3.800(b) allows the trial court to modify the sentence in question so as to impose any sentence which could have been imposed initially. Obviously, the sentence of two and one-half years’ incarceration could not have been imposed initially because [it was] below the guidelines minimum.
There remains the question of whether the trial court could entertain a motion to mitigate sentence by imposing a lesser sentence below the guideline minimum if he stated valid clear and convincing reasons in writing for doing so. We believe that a trial judge could do so under the present rules.
Accordingly, the order under review is reversed and the cause is remanded to the trial court with directions to reinstate the original sentence unless he again chooses to mitigate the sentence by imposing a mitigated sentence within the guidelines, or, if he chooses to impose a mitigated sentence below the guidelines, to set forth in writing clear and convincing reasons therefor in accordance with the requirements of Florida Rule of Criminal Procedure 3.701.
553 So.2d at 177. In Buchanan, this court further stated,
We agree with Judge Downey in State v. Allen, 553 So.2d 176 (Fla. 4th DCA 1989) that rule 3.800(b) should not be construed as allowing a procedural “end-run” around the written reason requirements of rule 3.701(d)(ll). Contemporaneous written reasons must be given, whether the departure is effected by the original sentence or by a motion for reduction pursuant to rule 3.800(b). See State v. Johns, 576 So.2d 1332 (Fla. 5th DCA 1991).
580 So.2d at 202-03. On review, the Supreme Court adopted this court’s opinion in Buchanan as its own. Buchanan v. State, 592 So.2d 676 (Fla.1992).
In the instant case, the trial judge did not give any written reasons for not following the DJJ’s recommended disposition. While the judge’s frustration with the apparent inequities in the DJJ’s recommendations on two cases before the court on the same docket is certainly understandable, his proposed solution was inappropriate. Because the trial court employed the same procedural “end run” as the one condemned in Allen, we apply the same reasoning and reverse the disposition.
On remand, the trial court must either follow the DJJ’s recommendation or, if a departure is warranted, set forth its written reasons for departure as required by E.A.R.
REVERSED and REMANDED WITH DIRECTIONS.
LAWSON, EVANDER and COHEN, JJ., concur.

. We understand this frustration and agree that the current juvenile disposition scheme does not give trial judges the discretion necessary to effectively deal with the children who appear before them.

. E.A.R. v. State, 4 So.3d 614 (Fla.2009).